UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DELAWARE COUNTY**
**BANK AND TRUST COMPANY,**

      Plaintiff,

                                                             Civil Action 2:15-cv-945
                                                             Judge James L. Graham
      v.                                         Magistrate Judge Elizabeth P. Deavers

**PMAC LENDING SERVICES, INC.,** *et al.*,

      Defendants.

<u>**OPINION AND ORDER**</u>

Plaintiff, the Delaware County Bank and Trust Company ("DCB"), brings this action against PMAC Lending Services, Inc. ("PMAC") and John Doe.[1] This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, the federal statute governing diversity jurisdiction. This matter is before the Court for consideration of PMAC's Motion to Transfer Venue (ECF No. 3), DCB's Memorandum in Opposition to PMAC's Motion (ECF No. 5), PMAC's Reply (ECF No. 10), and DCB's Surreply to PMAC's Reply (ECF No. 12). PMAC seeks a Court order transferring this matter to the United States District Court for the Central District of California ("Central District of California") pursuant to 28 U.S.C. § 1404(a). DCB opposes transfer. For the reasons set forth below, PMAC's Motion to Transfer Venue is **DENIED**. (ECF No. 3.)

**I.**

This dispute arose out of business dealings between DCB, Residential Finance Corporation ("RFC"), and PMAC. DCB is an Ohio corporation that has offices in Delaware and

---

[1] DCB raises several claims, including unjust enrichment, conversion, foreclosure of a security interest, replevin, breach of contract, and accounting. (Pl.'s Compl. ¶¶ 28-65, ECF No. 2.)

Franklin counties.  It is not authorized to do business in any other state.  PMAC is a California corporation that has an office and statutory agent in Ohio and is authorized to transact business in Ohio.  RFC was a corporation with its principal place of business in Columbus, Ohio that originated mortgage loans and was a seller-servicer approved by Fannie Mae and Ginnie Mae.

DCB alleges that in 2012 and 2013, it made loans to RFC and took blanket liens on RFC's assets as collateral.  DCB asserts that an important asset of RFC's was its Mortgage Servicing Rights ("MSRs").  In 2013, after RFC imploded, PMAC acquired substantial assets from RFC.  More specifically, on December 9, 2013, RFC and PMAC entered into a "MSR Purchase Agreement" under which RFC transferred all of its scheduled MSRs to PMAC.  (Compl. Ex. 4, ECF No. 2.)  PMAC asserts that RFC representatives traveled to Chino Hills, California to negotiate and execute the MSR Purchase Agreement.

PMAC also acquired RFC's loan pipeline.  The loan pipeline is "RFC's potential business through loans that were moving through the closing process, from application, underwriting approval, appraisal, and closing."  (Def.'s Mot. to Transfer Venue 3, ECF No. 3.)  In February 2014, PMAC, DCB, and RFC entered into a "Loan Pipeline Agreement," which was amended on March 3, 2014 and June 16, 2014.  (Compl. Ex. 6, ECF No. 2.)

DCB's claims stem from the MSR Purchase Agreement (Compl. Ex. 4, ECF No. 2) and the Loan Pipeline Agreement (Compl. Ex. 6, ECF No. 2).  DCB asserts that PMAC owes it the value of or proceeds from the MSRs because PMAC purchased the MSRs from RFC subject to its lien.  PMAC contends, however, that DCB does not have a valid security interest in the MSRs and therefore it does not owe DCB the value of or proceeds from the MSRs.[2]  PMAC asserts that

---

[2] In its Motion to Transfer Venue, Defendant makes arguments related to the merits of this case that have nothing to do with which venue is proper.  The Court will not address any

2

Fannie Mae is the true owner of the MSRs and that Fannie Mae's representatives are in California.

DCB also alleges that PMAC owes it certain profits under the Loan Pipeline Agreement. PMAC concedes that DCB's claims related to the Loan Pipeline Agreement have a greater connection to Ohio.

On March 16, 2015, PMAC removed the instant action from the Delaware County, Ohio Court of Common Pleas to this Court.  The following day, on March 17, 2015, PMAC filed its Motion to Transfer Venue.  In support of its Motion to Transfer Venue, PMAC presents several arguments as to why this action should be transferred to the United States District Court for the Central District of California.  DCB opposes transfer and asserts that the Central District of California is a not a "more convenient" forum.

**II.**

Section 1404(a) provides as follows:  "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).  Thus, the threshold consideration is whether the action could have been brought in the transferee court.  *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007).  If so, "the issue becomes whether transfer is justified under the balance of the language of § 1404." *Id*.

Here, DCB does not dispute that the Central District of California is a proper venue for this action.  Accordingly, the issue before the Court is whether transfer is justified under § 1404. *See id.*

---

contentions related to the merits of this action at this juncture.

"The moving party bears the burden of showing the need to transfer venue." *Slate Rock Const. Co. Ltd. v. Admiral Ins. Co.*, 2:10-CV-1031, 2011 WL 3841691, at *5 (S.D. Ohio Aug. 30, 2011) (citing *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp.2d 941, 945 (S.D. Ohio 2002)). The moving party must demonstrate that the proposed transferee court is "a *more* convenient forum, not [simply] a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964); *see also Shanechain v. Macy's, Inc.*, 251 F.R.D. 287, 292 (S.D. Ohio 2008) ("[Section] 1404 does not allow . . . for transfer if that transfer would only shift the inconvenience from one party to another.").

A district court deciding a § 1404(a) motion "has broad discretion to grant or deny" the requested transfer. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). Courts generally consider a variety of private and public factors when considering a motion to transfer to a more convenient forum. *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006). The Court considers the following interests of the litigants:

> "[P]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses–but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."

*Slate Rock Construction*, 2011 WL 3841691 (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)). The Court also considers the following interests of the public:

> "[T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases."

*Id*.

4

Because the parties agree that this action could have been brought in the Central District of California, the Court must weigh the various private and public factors to determine whether transfer is appropriate. For the reasons explained below, the Court concludes that the relevant factors weigh against transfer.

## A.    Private Interests

PMAC has failed to submit evidence that demonstrates that the Central District of California will be a more convenient forum for the litigants.

### 1.    Choice of Forum

In determining whether transfer is appropriate, Courts are to consider a plaintiff's original choice of forum. PMAC contends that DCB's forum choice is entitled to less weight because following removal, DCB is no longer in its chosen forum of Delaware County, Ohio. DCB counters PMAC's contention:

> [DCB's] choice of forum is entitled to greater weight than suggested by PMAC since [DCB] is located in Delaware County, Ohio, conducts business in Franklin and Delaware County, Ohio, and this matter has been transferred to the federal court pending in Franklin County, Ohio. In essence, while this matter has been removed from state court to federal court, this matter is still pending in the same general locale as [DCB] selected for its forum.

(Pl.'s Resp. in Opp 8, ECF No. 5.)

This Court has held that a "plaintiff's choice of forum is entitled to somewhat less weight when the case is removed to federal court because the plaintiff is no longer in his or her chosen forum." *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 166 (S.D. Ohio 2012). Nevertheless, some weight is still given to DCB's decision to bring this action in Ohio. This factor therefore weighs slightly in favor of DCB because its claims have a substantial connection to central Ohio.

PMAC contends, however, that this action has a greater connection to California than to Ohio.  With regards to DCB's claims related to the MSRs, PMAC asserts that RFC sent its representatives to Chino Hills, California where the MSR Purchase Agreement was negotiated, executed, and performed.  PMAC also contends that the transfer of the MSRs to PMAC required approval from Fannie Mae representatives who are located in California and that the MSRs and records related to them are in California.  Nevertheless, PMAC does not contend that representatives from *DCB* ever traveled to California at any point to negotiate or conduct activity related to the MSR Purchase Agreement or the Loan Pipeline Agreement.  Rather, DCB maintains that it was PMAC's representatives who traveled to Ohio on multiple occasions to meet with DCB representatives while negotiating its purchase of RFC's assets.

In addition, the claims at issue involve a dispute over whether DCB has a right to the value of or proceeds from the MSRs that RFC sold to PMAC.  These claims necessarily are connected to the state of Ohio.  As the record reflects, DCB and RFC allegedly entered into a security agreement in Ohio, under which DCB loaned RFC funds in exchange for a blanket lien on its assets, including the MSRs.  DCB alleges that it perfected its security interest in RFC's assets by filing a Financing Statement with the Ohio Secretary of State.  It is PMAC's position that DCB's lien is not valid and that DCB has released its lien on the MSRs.[3]  Thus, the bulk of the issues in this case will require consideration of the security agreement between DCB and RFC, which was executed in Ohio.

---

[3]Again, nothing in this Order is to be construed as a determination on the merits.  The Court only addresses the parties' arguments on the merits to determine which forum has a greater connection to DCB's claims.

With regard to DCB's claims related to the Loan Pipeline Agreement, PMAC concedes they have a greater connection to Ohio. Under these circumstances, the Court cannot conclude that the instant cause of action has a greater connection to California.

**2. Convenience of the Parties**

PMAC fails to demonstrate that the Central District of California will be a more convenient forum for the parties. DCB does not conduct business in California, did not travel to California at any point to negotiate the contracts at issue, and does not have counsel in California. If this action is transferred, DCB, at a minimum, would be required to find counsel in and travel to California. Contrarily, PMAC conducts business nationwide, had officers travel to Ohio to meet with DCB's representatives while negotiating the contracts at issue, and has counsel, a statutory agent, and an office in Ohio. Thus, DCB would be more inconvenienced by a transfer to the Central District of California than PMAC will be if this action proceeds in this forum. While the Central District of California may be more convenient for PMAC, it will not be more convenient for all of the parties. This factor therefore weighs in favor of DCB.

**3. Convenience of the Witnesses**

PMAC contends that Fannie Mae is the actual owner of the MSRs, and asserts that Joseph Grimes, who works at Fannie Mae's California office, will be called as a witness. PMAC asserts that Mr. Grimes is not subject to compulsory process in the Southern District of Ohio and that, if he agrees to attend a hearing in Ohio, the cost would be significant. PMAC does not contend, however, that Mr. Grimes would be unavailable to testify if the case were to proceed in this district. PMAC also asserts that many fact witnesses related to the MSR claims are located in California.

On the other hand, DCB anticipates it will call at least five of its employees as witnesses. It also anticipates calling at least four third-party witnesses who are former employees of RFC, including two of RFC's principals, David Stein and Michael Isaacs. PMAC concedes that David Stein and Michael Isaacs, who live in New Albany, Ohio, will be necessary witnesses. DCB further submits that it will call a witness who is located in Texas.

In this case, witnesses will be inconvenienced whether the case is transferred or remains in this Court. "[T]he convenience of the witnesses does not weigh heavily in the balance when there are witnesses on both sides of the case who will be inconvenienced depending on which forum is selected." *Bartell v. LTE Club Operations Co.,* No. 2:14-CV-00401, 2015 WL 770341, at *7 (S.D. Ohio Feb. 23, 2015). Because witnesses on both sides will be inconvenienced, this factor does not weigh heavily in favor of either party. To the extent it weighs in favor of either party, it weighs slightly in favor of DCB because RFC's former employees and shareholders, who are necessary witnesses, are located in Ohio.

### 4. Location of Books and Records

PMAC asserts that its records, particularly those related to the MSRs, are located in California. DCB asserts that its records are located in Ohio. Because these documents can be produced electronically, this factor does not weigh in favor of either party. *See Bartel*, 2015 WL 1730415, at * 4.

## B. Public Interests

### 1. Court Congestion

PMAC asserts that transfer is appropriate because this Court's docket is more congested than that of the Central District of California. PMAC cites Federal Judicial Caseload Statistics, which indicate that the time interval between filing and disposition for the twelve-month period

8

ending March 31, 2014, was quicker in the Central District of California than in the Southern District of Ohio.[4] DCB points out that PMAC has not alleged that this Court cannot accommodate this case. Nonetheless, based on the data presented by PMAC, it appears that the parties could reach a disposition more expeditiously in the Central District of California. This factor therefore weighs, albeit only slightly, in favor of PMAC.

    **3.    Local Interests**

This factor does not weigh heavily in favor of either party. California courts have an interest in adjudicating matters involving California corporations, and Ohio courts have an interest in resolving matters involving Ohio corporations. To the extent this factor weighs in favor of either party, it weighs in favor of DCB, as PMAC has an office in Ohio and is authorized to do business in Ohio. Further, as explained above, the claims have a greater connection to Ohio than to California.

    **4.    Familiarity of the Judge with the Applicable State Law**

In this case, the parties disagree over whether Ohio or California law applies. The Court need not make that determination at this juncture. Even if California law applies, there is no reason to transfer this action to the Central District of California on that basis because PMAC has not demonstrated that controlling law on the claims at issue is "unclear, unsettled, or difficult." *AMF, Inc. v. Computer Automation, Inc.*, 532 F. Supp. 1335, 1347-48 (S.D. Ohio 1982)

---

[4] In the Southern District of Ohio, the median time interval from filing to disposition was 9.6 months, and of the thirty cases that went to trial, the median time interval between filing and disposition was 29.4 months. In the Central District of California, the median time interval between filing and disposition was 5.8 months, and of the 146 cases that went to trial, the median time interval between filing a disposition was 21.4 months. (PMAC's Mot. to Transfer 11, ECF No. 3) (citing http://www.uscourts.gov/Statistics/FederalJudicialCaseloadStatistics/caseload-statistics-2014.aspx).

(finding that "there is no reason why this action need be transferred to California, since Defendant has failed to demonstrate that California law is unclear, unsettled, or difficult . . ."). Further, "[a]lthough choice of law provisions are relevant to venue, such provisions are not dispositive." *Midwest Motor Supply Co. v. Kimball*, 761 F. Supp. 1316, 1319 (S.D. Ohio 1991). Accordingly, even if the MSR Purchase Agreement and the Loan Pipeline Agreement contain a California choice of law provision, that alone is insufficient to warrant transfer.

### III.

In sum, PMAC has failed to demonstrate that the Central District of California is a *more* convenient forum for this litigation. The Court concludes that transferring this action would only shift any inconvenience from PMAC to DCB. *See Shanechain*, 251 F.R.D. at 292 ("[Section] 1404 does not allow . . . for transfer if that transfer would only shift the inconvenience from one party to another."). The Court has broad discretion to grant or deny a requested transfer. *Id.* After reviewing the facts of this case, the Court is not convinced that the relevant factors weigh in favor of transfer to the Central District of California. Accordingly, PMAC's Motion to Transfer Venue is **DENIED**. (ECF No. 3.)

**IT IS SO ORDERED.**

Date: May 21, 2015 /s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge